**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Ramzi Abadou (222567)
rabadou@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Fax: (415) 400-3001

-and-

Eric L. Zagar (250519)
ezagar@ktmc.com
Robin Winchester
rwinchester@ktmc.com
Kristen L. Ross
kross@ktmc.com
280 King of Prussia Road
Radnor, PA  19087
Telephone: (610) 667-7706
Fax: (267) 948-2512

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA STOCKMAN-SANN, Derivatively on Behalf of QUIKSILVER, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROBERT B. MCKNIGHT, JR., WILLIAM M. BARNUM, JR., JOSEPH F. BERARDINO, JAMES G. ELLIS, CHARLES S. EXON, M. STEVEN LANGMAN, ROBERT L. METTLER, PAUL C. SPEAKER, ANDREW W. SWEET, <br><br> Defendants, <br><br> and <br><br> QUIKSILVER, INC., a Delaware Corporation, <br><br> Nominal Defendant. | Case No.: 8:12-cv-01882-AG-JPR <br><br> **PLAINTIFF'S CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS MCKNIGHT, BARNUM, BERARDINO, ELLIS, EXON, LANGMAN, METTLER, SPEAKER, AND SWEET'S MOTION TO DISMISS THE CORRECTED VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT** |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................1

II.  STATEMENT OF FACTS ..........................................................................3

    A.   The Company ...................................................................................3

    B.   The Adoption of the 2000 Plan and The Board's History of Properly Seeking Shareholder Approval to Amend It ...........................3

    C.   The Improper 2011 Grants ...............................................................4

    D.   The Individual Defendants Attempt to "Fix" the Grants and Reveal the Secret Amendment to the Plan ...........................................5

    E.   The Cancellation of the 2011 Grants and Improper Grant to McKnight ...........................................................................................6

    F.   The False and Materially Misleading 2012 Proxy ..............................6

III. ARGUMENT .............................................................................................7

    A.   Individual Defendants' Motion to Dismiss Under Rule 12(b)(6) Should Be Denied Because Plaintiff Has Adequately Alleged Demand Futility .......................................................................7

    B.   Plaintiff's Claim for Breach of Fiduciary Duty in Connection With The 2011 Grants Is Moot ...........................................8

    C.   The Amended Complaint Adequately States a Claim for Breach of Fiduciary Duty Against Each of the Individual Defendants For Approving The Secret Amendment ...............................8

    D.   The Amended Complaint Adequately States a Claim for Breach of Fiduciary Duty Against Defendants Barnum, Berardino and Mettler In Connection With the November 2012 Grant to McKnight ...................................................................12

    E.   The Amended Complaint Adequately States a Claim for Violation of Section 14(a) of the Securities Exchange Act in Connection With The 2012 Proxy .................................................14

    F.   The Amended Complaint Adequately States a Claim For Waste of Corporate Assets .................................................................18

    G.   The Amended Complaint Adequately States a Claim for Unjust Enrichment ............................................................................20

IV.  CONCLUSION .......................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. U.S. Forest Service,*
    671 F.3d 1138 (9th Cir. 2012) ........................................................................ 7

*Aronson v. Lewis,*
    473 A.2d 805 (Del. 1984) ............................................................................... 7

*BelCom, Inc. v. Robb,*
    No. 14663, 1998 WL 229527 (Del. Ch. Apr. 28, 1998) .................................. 8

*Cal. Pub. Employees' Ret. Sys. v. Coulter,*
    No. 19191, 2002 WL 31888343 (Del. Ch. Dec. 18, 2002) ............................. 14

*Cantor Fitzgerald, L.P. v. Cantor,*
    724 A.2d 571 (Del. Ch. 1998) ....................................................................... 20

*Chavez v. U.S.,*
    683 F.3d 1102 (9th Cir. 2012) ........................................................................ 7

*Dura Pharmaceuticals, Inc. v. Broudo,*
    544 U.S. 336 (2005) ...................................................................................... 18

*EMAK Worldwide, Inc. v. Kurz,*
    50 A.3d 429 (Del. 2012) .................................................................................. 8

*FDIC v. Hawker,*
    No. 12-0127, 2012 WL 2068773 (E.D. Cal. June 7, 2012) ........................... 13

*Glazer v. Zapata Corp.,*
    658 A.2d 176 (Del. Ch. 1993) ....................................................................... 19

*Halpern v. Armstrong,*
    491 F. Supp. 365 (S.D.N.Y. 1980) ................................................................ 10

*In re Atmel Corp. Derivative Litig.,*
    No. 06-4592, 2008 WL 2561957 (N.D. Cal. June 25, 2008) .................. passim

*In re Brocade Commun's. Sys. Deriv. Litig.,*
    615 F. Supp. 2d 1018 (N.D. Cal. 2009) ........................................................ 19

*In re Citigroup Inc. S'holder Derivative Litig.,*
    964 A.2d 106 (Del. Ch. 2009) ..................................................................... 1, 7

*In re Finisar Corp. Derivative Litig.,*
    No. C-06-07660, 2012 WL 2873844 (N.D. Cal. July 12, 2012) ............... 19, 21

*In re Maxim Integrated Prods.,*
    574 F. Supp. 2d 1046 (N.D. Cal. 2008) ........................................................ 20

*In re McKesson HBOC, Inc. Sec. Litig.,*
    126 F. Supp. 2d 1248,1263 (N.D. Cal. 2000) ............................................... 16

*In re Mobileactive Media, LLC*,
   No. 5725-VCP, 2013 WL 297950 (Del. Ch. Jan. 25, 2013) ............................. 8

*In re Southwest Banking Corp.*,
   855 F. Supp. 353 (S.D. Fla. 1994) ................................................................... 13

*In re Tyson Foods, Inc.*,
   919 A.2d 563 (Del. Ch. 2007) ......................................................................... 21

*In re Zoran Corp. Derivative Litig.*,
   511 F. Supp. 2d 986 (N.D. Cal. 2007) .....................................................passim

*Jacoby v. Averell*,
   No. 72-cv-5441, 1974 WL 352 (S.D.N.Y. Jan. 16, 1974) .............................. 10

*La. Mun. Police Emp. Ret. Sys. v. Crawford*,
   918 A.2d 1172 (Del. Ch. 2007) ....................................................................... 21

*Mainiero v. Microbyx Corp.*,
   No. 14228-NC, 1996 WL 487939 (Del. Ch. Aug. 15, 1996) ............................ 8

*Paramount Comm'ns, Inc. v. QVC Network, Inc.*,
   637 A.2d 34 (Del. 1994) .................................................................................... 8

*Pershing Square, LP v. Ceridian Corp.*,
   923 A.2d 810 (Del. Ch. 2007) ......................................................................... 15

*Resolution Trust Corp. v. Fiala*,
   870 F. Supp. 962 (E.D. Mo. 1994) .................................................................. 13

*Richmond, F. & P. R.R. Co. v. Forst*,
   4 F.3d 244 (4th Cir. 1993) ............................................................................... 14

*Ryan v. Gifford*,
   918 A.2d 341 (Del. Ch. 2007) ...................................................................passim

*Sanders v. Wang*,
   No. 16640, 1999 WL 1044880 (Del. Ch. Nov. 8, 1999)............................passim

*Schock v. Nash*,
   732 A.2d 217 (Del. 1999)................................................................................. 20

*Shamrock Holdings v. Arenson*,
   456 F. Supp. 2d 599 (D. Del. 2006) ................................................................ 13

*Shocking Techs., Inc. v. Michael*,
   No. 7164-VCN, 2012 WL 4482838 (Del. Ch. Oct. 1, 2012) ............................ 9

*Stahl v. Gibraltar Fin. Corp.*,
   967 F.2d 335 (9th Cir. 1992)............................................................................ 14

*Sutherland v. Sutherland*,
   No. 2399-VCL, 2009 WL 857468 (Del. Ch. Mar. 23, 2009).......................... 13

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) ........................................................................ 14

*Waltzer v. Billera*,
    No. 72-cv-2052, 1973 WL 393 (S.D.N.Y. May 23, 1973) ................................ 10

STATUTES

15 U.S.C. §78n(a) ............................................................................ 14

Section 162(m) of the Internal Revenue Code ................................................ 5, 6, 12

Plaintiff Patricia Stockman-Sann ("Plaintiff"), by her undersigned counsel, respectfully submits this memorandum of law in opposition to Individual Defendants'[1] Motion to Dismiss the Corrected Verified Amended Shareholder Derivative Complaint (the "Motion to Dismiss").[2]

# I.  INTRODUCTION

The Corrected Verified Amended Shareholder Derivative Complaint (the "Amended Complaint")[3] has pled particularized facts to demonstrate that demand is excused as to the Individual Defendants.  *See generally* Plaintiff's Opposition to Nominal Defendant Quiksilver, Inc.'s ("Quiksilver" or the "Company") Motion to Dismiss the Corrected Verified Amended Shareholder Derivative Complaint filed concurrently herewith.  This is sufficient to state a claim for relief under Fed. R. Civ. P. 12(b)(6) and this Court should deny Individual Defendants' Motion to Dismiss in its entirety.  *See Ryan v. Gifford*, 918 A.2d 341, 357 (Del. Ch. 2007); *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 139 (Del. Ch. 2009); *In re Atmel Corp. Derivative Litig.*, No. 06-4592, 2008 WL 2561957, at *9 (N.D. Cal. June 25, 2008).

In any event, the Amended Complaint sufficiently alleges that the Individual Defendants knowingly breached their fiduciary duties to Quiksilver by secretly adopting an amendment to the Company's 2000 Stock Incentive Plan (as amended and restated, the "2000 Plan") that would allow the Compensation Committee (the "Compensation Committee") of the Quiksilver Board of Directors (the "Board") to grant stock-based awards that would not be subject to the 2000 Plan's 800,000 per-person, per-year limit (the "Secret Amendment") without first seeking or obtaining

---

[1] The term "Individual Defendants" refers to Robert B. McKnight Jr. ("McKnight"), William M. Barnum ("Barnum"), Joseph F. Berardino ("Berardino"), James G. Ellis ("Ellis"), Charles S. Exon ("Exon"), M. Steven Langman ("Langman"), Robert L. Mettler ("Mettler"), Paul C. Speaker ("Speaker") and Andrew S. Sweet ("Sweet").

[2] Citations to the memorandum in support of Individual Defendants' Motion to Dismiss [Dkt. 22] will be referenced as "Ind. Def. Memo at __."

[3] Unless otherwise defined, all paragraph ("¶") citations herein are to the Amended Complaint.

shareholder approval in direct violation of the express terms of the 2000 Plan. The Individual Defendants then tried to conceal the violation with a false and misleading Form DEF 14A filed with the Securities and Exchange Commission ("SEC") on February 8, 2012 (the "2012 Proxy") that omitted material information necessary for Plaintiff and other Quiksilver shareholders to make a fully-informed decision regarding the election of Quiksilver's directors, specifically, that the Compensation Committee had already granted restricted stock units to certain Quiksilver executives in violation of the 2000 Plan and failed to disclose the existence of the Secret Amendment, which further violated the 2000 Plan because the Board approved it without first seeking or obtaining shareholder approval.

On December 26, 2012, Plaintiff filed the Amended Complaint in response to a Form 8-K filed with the SEC on November 13, 2012 (the "8-K") whereby the Company admitted, as a result of Plaintiff's initial complaint filed with this Court on October 29, 2012 (the "Complaint"), that restricted stock units granted to the Company's President and Chief Executive Officer ("CEO"), defendant McKnight, President of Quiksilver Europe Pierre Agnes ("Agnes") and President of Quiksilver Americas Craig Stevenson ("Stevenson") violated the express terms of the 2000 Plan that prohibits the Compensation Committee from granting any one person more than 800,000 shares of Quiksilver common stock in any calendar year (the "Limit"). As a result, these *ultra vires* restricted stock units that violated the Limit were cancelled. Despite admitting that the Individual Defendants violated the 2000 Plan, the Compensation Committee further breached their fiduciary duties and wasted Company assets on November 13, 2012 by once again granting defendant McKnight restricted stock units in excess of the Limit. In addition, McKnight was unjustly enriched by his receipt of the improper November 2012 grant. Hence, for the reasons stated herein, Plaintiff respectfully submits that the Court should deny Individual Defendants' Motion to Dismiss in its entirety.

## II.   STATEMENT OF FACTS

### A.   The Company

Quiksilver, a Delaware corporation, designs, develops and distributes branded apparel, footwear, accessories and related products, catering to the casual, youthful lifestyle associated with the sports of surfing, skateboarding and snowboarding. ¶15.[4]  At the time the Complaint was filed, the Board consisted of the nine Individual Defendants.[5]  ¶¶16-24.  Two of these directors, defendants McKnight and Exon, also serve as executive officers of the Company. Defendant McKnight co-founded Quiksilver in 1976 and has served as CEO and Chairman of the Board since 1976. ¶16.  Exon has served as Quiksilver's Secretary and General Counsel since August 2000 and as Chief Administrative Officer ("CAO") since February 2008.  ¶20.

### B.   The Adoption of the 2000 Plan and The Board's History of Properly Seeking Shareholder Approval to Amend It

In 2000, the Company adopted and Quiksilver shareholders approved the 2000 Plan.  ¶34.[6]  The 2000 Plan allows the Company to award stock options, restricted stock and restricted stock units ("RSUs") to executive officers, employees and directors.   ¶¶3, 35, 37.   The 2000 Plan is administered by the Compensation Committee which has authority to determine the incentive and equity compensation awarded to the CEO.  ¶¶31-32, 36.

As described by Quiksilver in its SEC filings, one of the 2000 Plan's "principal features" is its express limitation on the number of equity awards that an individual may be granted on an annual basis.  ¶43.  In March 2006, the Board, at which time included defendants Barnum, Exon and McKnight, sought and received

---

[4] All paragraph ("¶") references herein are to the Amended Complaint.

[5] The term "Individual Defendants" refers to Robert B. McKnight Jr. ("McKnight"), William M. Barnum ("Barnum"), Joseph F. Berardino ("Berardino"), James G. Ellis ("Ellis"), Charles S. Exon ("Exon"), M. Steven Langman ("Langman"), Robert L. Mettler ("Mettler"), Paul C. Speaker ("Speaker") and Andrew S. Sweet ("Sweet").

[6] McKnight and Barnum were on the Board when the 2000 Plan was adopted.  ¶¶16-17.

approval from Quiksilver's shareholders to amend the 2000 Plan to increase the per-person annual limit from 400,000 to 800,000.  ¶¶16, 17, 20, 43.  Specifically, the 2000 Plan states that "[n]o person participating in the [2000] Plan may receive Awards[7] for more than 800,000 shares of Common Stock in the aggregate per calendar year" (the "Limit").  ¶37.   Thus, an award of more than 800,000 RSUs to any one person during a calendar year necessarily violates the express terms of the 2000 Plan.  *Id.*

In 2011, the Board sought shareholder approval to amend the 2000 Plan to increase the reserve of common stock available for issuance thereunder (the "2011 Amendment").   ¶38.   Indeed, the Quiksilver proxy statement disseminated in connection with the 2011 Amendment specifically states that the Limit remained at 800,000 shares of common stock in the aggregate per calendar year.  *Id.*   The Individual Defendants were on the Board at the time 2000 Plan was amended in 2011.   ¶¶16-24.   The 2011 Amendment, including the Limit, was approved by Quiksilver's shareholders at the Company's annual meeting on March 22, 2011. ¶39

### C.    The Improper 2011 Grants

Despite the clear and unambiguous Limit, the 2012 Proxy disclosed that on June 13, 2011, the Compensation Committee, defendants Berardino, Barnum and Mettler, granted defendant McKnight 2,000,000 RSUs and Agnes and Stevenson 1,000,000 RSUs each (the "2011 Grants").  ¶4, 40.  The award of 2,000,000 RSUs to McKnight exceeded the Limit by 1,200,000 and each award of 1,000,000 RSUs granted to Agnes and Stevenson exceeded the Limit by 200,000.  ¶41.  Berardino, Barnum and Mettler, as members of the Compensation Committee, knew the Limit, yet they knowingly violated the Limit by granting these excessive awards to McKnight, Agnes and Stevenson.  ¶42.

---

[7] The 2000 Plan defines "Award" as "any of the following stock or stock-based awards authorized for issuance or grant under the Plan: stock option, stock appreciation right, Restricted Stock or Restricted Stock Unit award."  ¶39.

**D.    The Individual Defendants Attempt to "Fix" the Grants and Reveal the Secret Amendment to the Plan**

On October 29, 2012, Plaintiff filed the Complaint alleging, *inter alia*, the members of the Compensation Committee breached their fiduciary duties and wasted corporate assets by granting McKnight, Agnes and Stevenson an aggregate of 1.6 million RSUs in excess of the Limit and in deliberate violation of the 2000 Plan. ¶46.  Two weeks later, on November 13, 2012, in direct response to the Complaint, the Company filed with the SEC the 8-K stating that in February 2012, without seeking or obtaining shareholder approval or even making any public disclosure, the Board had "formally" amended the 2000 Plan to eliminate the Limit "for awards that were not intended to be exempt from Section 162(m) of the…[Internal Revenue] Code [of 1986]…and not designed to be deductible by the Company for tax purposes" (the "Secret Amendment").   ¶47.   The 8-K further stated that "[i]n adopting the…[Secret] [A]mendment, our Board of Directors provided it was effective as of June 13, 2011 (the date of the…2011 Grants)," thereby retroactively applying the Secret Amendment to the 2011 Grants.  *Id.*

The 2000 Plan provides, however, that "stockholder approval will be required for any amendment to the [2000] Plan that would (i) materially increase the benefits accruing to…Participants under the [2000] Plan[.]"  ¶49.  As discussed herein, the Secret Amendment adopted by the Board effectively eliminated the Limit by providing the Board with the ability to designate certain awards as non-exempt from 162(m) of the Code and thus not subject to the Limit.  The Secret Amendment was in clear violation of the 2000 Plan because it "materially increase[d] the benefits" accruing to participants, by allowing the Compensation Committee to grant and participants  to receive unlimited awards rather than being limited to 800,000 units per calendar year.  ¶50.  As such, the Secret Amendment is *ultra vires* and invalid because it required Quiksilver shareholders to approve this amendment prior to its adoption, which the Board neither sought nor obtained.  *Id.*

### E.     The Cancellation of the 2011 Grants and Improper Grant to McKnight

According to the 8-K, on November 13, 2012, McKnight, Agnes and Stevenson surrendered, and the Company cancelled, the RSUs granted on June 13, 2011 in excess of the Limit.  ¶51.  Specifically, the 8-K stated that "McKnight, Stevenson and Agnes surrendered 1,200,000, 200,000 and 200,000 of the RSUs they received in the…2011 Grants."  *Id.*    Following the cancellation and surrender, the 8-K stated that the Compensation Committee, defendants Barnum, Berardino and Mettler, granted to McKnight, Agnes and Stevenson 1,200,000, 200,000 and 200,000 RSUs, respectively, under substantially similar terms as those of the 2011 Grants. ¶52.  Because the Secret Amendment is not a valid, the November 13, 2012 grant of 1,200,000 RSUs to defendant McKnight (the "2012 Grant") still violated the 2000 Plan because it exceeded the Limit by 400,000 units.  ¶53.

### F.     The False and Materially Misleading 2012 Proxy

On February 8, 2012, the Company filed the 2012 Proxy that failed to disclose that the 2011 Grants as approved by Compensation Committee violated the 2000 Plan or that the Board violated the 2000 Plan by approving the Secret Amendment without first seeking or obtaining shareholder approval.  ¶54.  Indeed, the Board did not even publicly disclose the existence of the Secret Amendment until it filed the 8-K in November 2012 in response to the Complaint, nearly eight months after the fact.  *Id.*  The Board did not seek shareholder approval to increase the Limit, as required, because the 2012 Proxy was the first disclosure of the *ultra vires* 2011 Grants, and no reasonable stockholder would vote for an amendment to increase the Limit having just learned the Compensation Committee, whose members Barnum, Berardino and Mettler were up for re-election, had violated the 2000 Plan by making the 2011 Grants.  Nor would shareholders re-elect these individuals to the Board.

### III.   ARGUMENT

#### A.   Individual Defendants' Motion to Dismiss Under Rule 12(b)(6) Should Be Denied Because Plaintiff Has Adequately Alleged Demand Futility

In adjudicating a motion to dismiss under Rule 12(b)(6), the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff. *Adams v. U.S. Forest Service*, 671 F.3d 1138, 1142-43 (9th Cir. 2012) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).   To survive a motion to dismiss, a plaintiff need only plead facts sufficient to "state a claim to relief that is plausible on its face." *Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1108-09 (quoting *Iqbal*, 556 U.S. at 678).

Moreover, where Plaintiff has pled particularized facts to demonstrate demand futility, as set forth in Plaintiff's Opposition to Quiksilver's Motion to Dismiss the Corrected Verified Amended Shareholder Derivative Complaint, Plaintiff has also sufficiently stated a claim for relief. *See Ryan*, 918 A.2d at 357 ("In the context of a motion to dismiss for failure to state a claim, however, the pleading standard does not reach so high a bar as Rule 23.1.   Thus, where plaintiff alleges particularized facts sufficient to prove demand futility under the second prong of *Aronson*, that plaintiff *a fortiori* rebuts the business judgment rule for the purpose of surviving a motion to dismiss pursuant to Rule 12(b)(6)."); *Citigroup*, 964 A.2d at 139 ("a complaint that survives a motion to dismiss pursuant to Rule 23.1 will also survive a 12(b)(6) motion to dismiss"); *Atmel*, 2008 WL 2561957, at *9 ("[C]ourts have held that where a plaintiff has alleged facts sufficient to prove demand futility they have also satisfied the burden under Rule 12(b)(6).").

Plaintiff has adequately alleged that demand is futile, and therefore Individual Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) should be denied.

**B.    Plaintiff's Claim for Breach of Fiduciary Duty in Connection With The 2011 Grants Is Moot**

Plaintiff agrees that Count I of the Amended Complaint for breach of fiduciary duty in connection with the 2011 Grants is moot as a result of McKnight, Agnes and Stevenson's surrender of 1.6 million restricted stock units, the total amount by which the 2011 Grants exceeded the Limit.  Thus, as a direct and proximate result of the Complaint and Plaintiff's prosecution of this action, 1.6 million *ultra vires* restricted stock units were cancelled which conferred a substantial benefit on the Company and all of its shareholders.

**C.    The Amended Complaint Adequately States a Claim for Breach of Fiduciary Duty Against Each of the Individual Defendants For Approving The Secret Amendment**

"Shareholder voting rights are sacrosanct."  *EMAK Worldwide, Inc. v. Kurz*, 50 A.3d 429, 433 (Del. 2012).  "Delaware Courts support the enfranchisement of Delaware's corporations' shareholders.  The importance of allowing shareholders to vote at an annual meeting is critical to effective corporate governance." *Mainiero v. Microbyx Corp.*, No. 14228-NC, 1996 WL   487939, at *3 (Del. Ch. Aug. 15, 1996). "Because of the overriding importance of voting rights, [the Delaware Supreme Court] and the Court of Chancery have consistently acted to protect stockholders from unwarranted interference with such rights."  *Paramount Comm'ns, Inc. v. QVC Network, Inc.*, 637 A.2d 34, 42 (Del. 1994).  The Individual Defendants took this right away from Plaintiff and Quiksilver shareholders by depriving them of the right to vote on the Secret Amendment and have therefore breached their fiduciary duties.

To state a claim for breach of fiduciary duty, a complaint need only allege: (1) that a fiduciary duty existed; and (2) that the defendant breached that duty.  *In re Mobileactive Media, LLC*, No. 5725-VCP, 2013 WL 297950, at *21 (Del. Ch. Jan. 25, 2013).  It is well-settled that officers and directors are fiduciaries and owe the duties of care, good faith and loyalty to their corporations and the stockholders they serve.  *BelCom, Inc. v. Robb*, No. 14663, 1998 WL 229527, at *3 (Del. Ch. Apr. 28,

1998) (citation omitted).  *See also Shocking Techs., Inc. v. Michael*, No. 7164-VCN, 2012 WL 4482838, at *8 (Del. Ch. Oct. 1, 2012) ("The fiduciary duty of loyalty imposes on a director an affirmative obligation to protect and advance the interests of the corporation and requires a director absolutely [to] refrain from any conduct that would harm the corporation.  Encompassed within the duty of loyalty is a good faith aspect as well.  To act in good faith, a director must act at all times with an honesty of purpose and in the best interest and welfare of the corporation.") (internal citations and quotations omitted).

An allegation that directors failed to honor an unambiguous provision of a shareholder-approved stock option plan sufficiently establishes a claim for breach of fiduciary duty.  *Sanders v. Wang*, No. 16640, 1999 WL 1044880, at *1 (Del. Ch. Nov. 8, 1999).  Here, Plaintiff alleges that: (i) the shareholder-approved 2000 Plan contains an unambiguous and non-discretionary restriction on amendments to the 2000 Plan that provides "stockholder approval will be required for any amendment to the [2000] Plan that would (i) materially increase the benefits accruing to…Participants under the [2000] Plan" (¶49); and (ii) the Individual Defendants, as members of the Board, formally amended the 2000 Plan to eliminate the Limit without first seeking or obtaining shareholder approval as required by the 2000 Plan (¶¶6, 47).  The 2000 Plan specifically states that shareholder approval is required for an amendment that "materially" increases benefits to participants under the Plan. ¶49.[8]  Since the Secret Amendment provides the Compensation Committee with

---

[8] Individual Defendants' argument that Plaintiff selectively quotes from the 2000 Plan and that somehow the 2000 Plan specifically provides that shareholder approval was not required for the Amendment is entirely without merit.  Ind. Def. Memo at 12.  Rather, it is the Individual Defendants that selectively quote the 2000 Plan in the Motion.  *See generally* Ex. A to the Amended Complaint.  The clear and unambiguous language of the 2000 Plan requires shareholder approval for any amendment that would, *inter alia*, "materially increase the benefits accruing to…Participants under the Plan."  ¶49.  As described herein, the Secret Amendment allows the Compensation Committee to grant awards in excess of the Limit and therefore, per the clear language of the 2000 Plan, required shareholder approval.  This point is further strengthened by the fact that the Board sought and obtained shareholder approval for similar amendments in 2006 and 2011.  ¶¶38, 43.

unfettered discretion to award restricted stock units to 2000 Plan participants in excess of the Limit, Individual Defendants cannot now argue shareholder approval was not required. *See Sanders*, 1999 WL 1044880, at 10; *see also Waltzer v. Billera*, No. 72-cv-2052, 1973 WL 393, at *5, 7 (S.D.N.Y. May 23, 1973) ("the management of USA and the Executive Incentive Compensation Committee were not justified in amending the 1967 Plan in derogation of the language of Paragraph 2 without obtaining shareholder approval" which "involve[s]…the breach of common law fiduciary duties[.]"); *Jacoby v. Averell*, No. 72-cv-5441, 1974 WL 352, at *5 (S.D.N.Y. Jan. 16, 1974) (same); *Halpern v. Armstrong*, 491 F. Supp. 365, 377 (S.D.N.Y. 1980) (holding that the board defendants were required, under the express terms of a shareholder-approved stock option plan, to submit any amendments they wished to make to the plan for shareholder approval, and failing to do so rendered the amendment null and void).

Plaintiff's Amended Complaint alleges far more than the Individual Defendants simply violated the 2000 Plan. Indeed, the Amended Complaint alleges that the Individual Defendants knowingly did so, which constitutes a breach of the duties of good faith and loyalty. Defendants McKnight and Barnum were on the Board when the 2000 Plan was adopted and in 2006 when the Company's shareholders approved various amendments to the 2000 Plan, including an increase from the previous per-person annual limit of 400,000 shares. ¶¶16-17, 43. Furthermore, defendants McKnight, Barnum, Exon, Langman, Mettler, Speaker and Sweet were on the Board in 2011 when the Company sought shareholder approval of the 2011 Amendment. ¶¶16-17, 19-24, 38. Thus, the Individual Defendants are well aware of the terms of the 2000 Plan.

As members of the Board, and with knowledge of the terms of the 2000 Plan, the Individual Defendants violated the 2000 Plan by adopting the Secret Amendment without first seeking or obtaining shareholder approval. The Individual Defendants'

knowledge is further exhibited by the fact that they didn't disclose the Secret Amendment until November 2012, nearly nine months after its adoption by the Board.  ¶¶6, 47.  It is well-settled that a knowing violation of a shareholder-approved stock plan constitutes bad faith.  *See*, *e.g.*, *Ryan*, 918 A.2d at 358 ("I am unable to fathom a situation where the deliberate violation of a shareholder approved stock option plan and false disclosures, obviously intended to mislead shareholders into thinking that the directors complied honestly with the shareholder-approved option plan, is anything but an act of bad faith.").  "Acts taken in bad faith breach the duty of loyalty."  *Ryan*, 918 A.2d at 357 (citation omitted).  The Individual Defendants cannot now dispute they knowingly breached their fiduciary duties.

Individual Defendants inexplicably argue that *Sanders* and *Ryan* are inapposite because "Plaintiff…does not allege that a single dollar, let alone a single share, has transferred as a result of the…November 2012 Grants to McKnight."  Ind. Def. Memo at 14.  Individual Defendants are simply wrong.  The Delaware Court of Chancery in *Sanders* and *Ryan* held that when directors violate the express and unambiguous terms of a shareholder-approved stock option plan, these allegations are sufficient to establish a claim for breach of fiduciary duty.  *See Sanders*, 1999 WL 1044880; at *1, *Ryan*, 918 A.2d at 357-58.  Contrary to the Individual Defendants' argument, Plaintiff does not need to allege that any money or shares transferred to defendant McKnight as a result of the 2012 Grant.  The Delaware Court of Chancery addressed this exact argument in *Sanders* and *Ryan* in denying defendants' motion to dismiss a claim for unjust enrichment.  *See Ryan*, 918 A.2d at 361 ("Gifford does retain something of value, the alleged backdated options, at the expense of the corporation and shareholders.  Further, defendants make no allegations that Gifford is precluded from exercising these options or that the options have expired.  Thus, one can imagine a situation where Gifford exercises the options….Even if Gifford fails to exercise a single option during the course of this

1    litigation, that fact would not justify dismissal of the unjust enrichment claim."); *In*

2    *re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1018-19 (N.D. Cal. 2007)

3    ("There are no allegations as to…the number of options that were exercised, or that

4    any backdated options were sold by defendants.  Such facts are not necessary at the

5    pleading stage and are issues to be resolved after discovery.").

6         In their final attempt to persuade this Court to dismiss Plaintiff's claim against

7    them, the Individual Defendants argue that the Secret Amendment "was a mere

8    clarification that the 800,000 share limit applied only to shares intended to be exempt

9    from Section 162(m) of the Internal Revenue Code."  Ind. Def. Memo at 14-15.  This

10   argument is a red herring.  First, the Secret Amendment is not a  "clarification" as it

11   effectively eliminated the Limit, however, it has no bearing on whether the

12   Individual Defendants breached their fiduciary duties by adopting the Secret

13   Amendment without seeking or obtaining shareholder approval as required under the

14   2000 Plan.  As discussed herein, the Limit has always stood at 800,000 shares and

15   was violated when the Compensation Committee granted McKnight 1,200,000

16   restricted stock units in November 2012.   Although the Individual Defendants

17   attempt to argue that this grant was proper because the 2000 Plan was purportedly

18   validly amended, which it was not, the Board did not disclose the existence of the

19   Secret Amendment until after the Complaint was filed, further undermining its

20   validity.  Accordingly, Plaintiff has properly pled a claim for breach of fiduciary

21   duty in connection with the Secret Amendment.

22        **D.    The Amended Complaint Adequately States a Claim for Breach of**
             **Fiduciary Duty Against Defendants Barnum, Berardino and**
23           **Mettler In Connection With the November 2012 Grant to**
             **McKnight**
24
             As discussed herein, "[a]n allegation that a board of directors awarded…more
25
     shares than a stock plan expressly authorized sufficiently establishes [a] claim[]
26
     for…breach of fiduciary duty."  *Sanders,* 1999 WL 1044880, at *1.  Here, like in
27
     *Sanders*, it is alleged that defendants Barnum, Berardino and Mettler, as members of
28

the Compensation Committee, granted restricted stock units to defendant McKnight in November 2012 that violated the express and non-discretionary Limit.  ¶7, 52, 84.  The board cannot justify its clear violation of the express terms of the [2000] Plan nor can it justify the unauthorized share awards under any other legal authority.  *Sanders*, 1999 WL 1044880, at *6.  As such, "the alleged acts, drawing all inferences in plaintiffs' favor, raise sufficient question[s] about the appropriateness of the share grants to state a claim for breach of fiduciary duty and for this Court to deny defendants' motion to dismiss"  *Id.* at 10.

Individual Defendants argue that Plaintiff's breach of fiduciary duty claims should be dismissed as a matter of law because the defendants are afforded the protection of the business judgment rule.  Ind. Def. Memo at 10-11.  However, the fact-based business judgment rule goes to the merits of Plaintiff's claims and therefore is premature at the motion to dismiss stage of the proceedings.  It is well settled that "the business judgment rule is a factually based affirmative defense that is inappropriate for consideration on a motion to dismiss."  *See Shamrock Holdings v. Arenson*, 456 F. Supp. 2d 599, 609 (D. Del. 2006) (refusing to rely on the business judgment rule to dismiss a complaint at the pleading stage); *Sutherland v. Sutherland*, No. 2399-VCL, 2009 WL 857468, at *4 n.16 (Del. Ch. Mar. 23, 2009) (citing *Michelson v. Duncan*, 407 A.2d 211, 223 (Del. 1979)) (for corporate waste claims whether the corporation exercised a reasoned business judgment is a question that is highly fact-intensive and is seldom subject to disposition without trial); *FDIC v. Hawker*, No. 12-0127, 2012 WL 2068773, at *9 (E.D. Cal. June 7, 2012) (denying motion to dismiss, stating "[t]he business judgment rule is an affirmative defense which involves factual issues to preclude its application to dismiss the complaint's claims"); *see also Resolution Trust Corp. v. Fiala*, 870 F. Supp. 962, 971 (E.D. Mo. 1994) (denying defendants' motion to dismiss based on the business judgment rule); *In re Southwest Banking Corp.*, 855 F. Supp. 353, 360 n.6 (S.D. Fla. 1994) ("[T]he

1    fact based business judgment rule defense should not be considered in a motion to

2    dismiss.").   Individual Defendants spill much ink in arguing the application of the

3    business judgment rule to Plaintiff's breach of fiduciary duty claims, but wholly

4    ignore that this defense is chronologically misplaced at this stage of the proceedings.

5    Moreover, even if the business judgment rule were applicable for consideration at

6    this time, which it is not, the business judgment rule does not "shelter unauthorized

7    actions of a board of directors." *Cal. Pub. Employees' Ret. Sys. v. Coulter*, No.

8    19191, 2002 WL 31888343, at *10 (Del. Ch. Dec. 18, 2002) (quoting *Aronson v.*

9    *Lewis*, 473 A.2d 805, 812 (Del. 1984)).    Accordingly, Individual Defendants'

10   business judgment rule defense is more properly reserved for consideration on a

11   motion for summary judgment.  *See Richmond, F. & P. R.R. Co. v. Forst*, 4 F.3d

12   244, 250 (4th Cir. 1993) (holding that affirmative defenses are properly considered

13   in a summary judgment motion, not a motion on the pleadings).

14        **E.      The Amended Complaint Adequately States a Claim for Violation
             of Section 14(a) of the Securities Exchange Act in Connection With
15           The 2012 Proxy**

16        Section 14(a) and Rule 14a-9 prohibit the dissemination of proxy statements

17   that contain a statement that "is false or misleading with respect to any material fact,

18   or which omits to state any material fact necessary in order to make statements

19   therein not false or misleading," to solicit a proxy.  15 U.S.C. §78n(a).  In order to

20   state a claim under Section 14(a), a plaintiff must allege (1) a proxy statement

21   contained a material misrepresentation or omission, (2) defendants' negligence, and

22   (3) an "essential link" between the proxy and the harm alleged. *Zoran*, 511 F. Supp.

23   2d at 1015.  "An omitted fact or misrepresentation in a proxy statement is material

24   when there is a substantial likelihood that a reasonable shareholder would consider it

25   important in deciding how to vote."  *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S.

26   438, 449 (1976).  Under Supreme Court precedent, "use of a solicitation that is

27   materially misleading is itself a violation of law."  *Stahl v. Gibraltar Fin. Corp.*, 967

28

F.2d 335, 337 (9th Cir. 1992) (quoting *Mills v. Elec. Auto-Lite*, 396 U.S. 375, 383 (1970)) (emphasis in original).  A claim brought under Section 14(a) can be based either on negligence or fraud.

The misrepresentations in the 2012 Proxy were materially false and misleading because defendants failed to disclose the Secret Amendment, which resulted in potentially voiding the 2000 Plan and then defendants continued to grant awards pursuant to a potentially void plan and in violation thereof.  Defendants knew the Limit and knew that they were not allowed to unilaterally amend the 2000 Plan which effectively eliminated the Limit.  Despite this, the 2012 Proxy contained no reference to the Secret Amendment nor did it seek shareholder approval to increase the Limit.  There is no dispute that the 2012 Proxy was false and misleading with respect to the Secret Amendment, as the Individual Defendants do not dispute that the 2012 Proxy entirely fails to mention it.

The proxy misrepresentation is material because a reasonable shareholder would consider whether the 2000 Plan was improperly amended and being administered properly and whether the Compensation Committee members who were charged with approving awards, were properly performing their duties as an essential link in determining whether to continue re-elect them.  *See*, *e.g.*, *Zoran*, 511 F. Supp. 2d at 1016 ("If defendants had not falsely stated in . . . proxy statements that stock options were being granted properly under the plans, and that directors were complying with the terms of the plans that the shareholders approved, shareholders would have voted those board members out, and the board members would no longer have had the means to grant more backdated stock options."); *Pershing Square, LP v. Ceridian Corp*., 923 A.2d 810 (Del. Ch. 2007) ("Stockholders have a legitimate interest in monitoring how the boards of directors of Delaware corporations perform their managerial duties.").  The Compensation Committee Charter expressly charged the committee members with, among other things, granting equity awards to

executives and officers under the 2000 Plan.  ¶¶31-32.  In other words, defendants Barnum, Berardino and Mettler, as members of the Compensation Committee, bore ultimate responsibility for ensuring that shareholders were truthfully apprised of all matters relating to the 2000 Plan including the 2012 Proxy Statement.  A reasonable shareholder certainly would have found it material in determining whether to re-elect them as directors that the members of the Compensation Committee were shirking their duties.  The proper execution of the Compensation Committee members' duties was certainly material and an essential link to defendants' Barnum, Berardino and Mettler abilities to maintain their positions on the Board.

With regard to the state of mind requirement, nothing more than an averment of negligence is required to state a claim for violation of Section 14(a). *See, e.g.*, *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248,1263 (N.D. Cal. 2000) ("Defendants argue that the appropriate standard of culpability under Rule 14a-9 is scienter, while Lead Plaintiff argues for a lower negligence standard.  Lead Plaintiff's position is correct."); *Id*. at 1264 ("The court accordingly holds that all persons liable under Section 14 should be held to the same standard of culpability: negligence.").

In *Zoran*, the court explained the negligence standard for asserting a Section 14(a) violation as follows:

> The heightened pleading standards of the PSLRA do apply to claims under this section [14 claim].  However, a state of mind of negligence will suffice as to the degree of culpability. *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267.  Accordingly, del Rosario "must plead with particularity facts that give rise to a strong inference of negligence." *Ibid*. **Here, plaintiff need not plead that defendants' conduct was knowing, but he must plead particular facts as to each defendants' negligence**.

> Defendants argue that plaintiff has not met this element and, instead, that plaintiff has merely recited boilerplate allegations that the compensation committee and audit committee defendants knew or

should have known about the misstatements and omissions. This argument ignores that these defendants had duties with respect to the grant of stock options and accounting practices within the company. The compensation committee was given authority under the stock-options plans to administer the plans and to ensure compliance with them. Specifically, they bore ultimate responsibility for ensuring that stock options were granted at fair market value on the date of the grant as well as deciding the grant dates for the options. Elsewhere in the complaint, plaintiff has pled that this was not the case at Zoran. Even if somehow these pled facts could lead to the inference that the compensation committee did not know that backdating was occurring, they certainly lead to the inference that the compensation committee neglected its duty and was thus negligent.

This argument applies with equal force to the audit committee defendants. **They were charged with ensuring compliance with accounting standards and making certain that Zoran's financial statements and proxy statement were correct and accurate. Even if they did not know backdating was occurring, under these pleaded facts, they have still shirked their duties.** Thus plaintiff has successfully pled this element of his claim [state of mind].

*Zoran*, 511 F. Supp. 2d at 1015-16 (emphasis added).

In spite of the clear and obvious holding in *Zoran* (precedent which defendants conveniently omit from their motions), and the plethora of case law cited above, defendants argue that Plaintiff has failed to allege the Section 14(a) claim with the requisite level of culpability *i.e.*, negligence. In light of the particularized allegations of negligent conduct averred in the Amended Complaint, however, it is an understatement to say that defendants acted with a negligent state of mind. If nothing else, they were negligent in not knowing that the 2012 Proxy contained numerous misrepresentations relating to the 2000 Plan (¶¶54-59), and any reasonable and prudent director would not have permitted such false and misleading statements to be published. Therefore, because all elements are met, Plaintiff has adequately pled a claim for violation of Section 14(a).

Notwithstanding Plaintiff's established Section 14(a) claim, defendants further argue that there is not a proper showing of "loss causation" under the PSLRA to support Plaintiff's proxy violation allegation.  Such an assertion ignores the facts of this case.  The Amended Complaint is sufficient in alleging a connection between Quiksilver's  economic loss and the defendants' wrongdoing – Quiksilver continued to issue equity awards which were invalid under the 2000 Plan.  In fact, the only thing required is a "short and plaint statement" under Rule 8, as there is no "special further requirement in respect to the pleading of proximate causation or economic loss." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005).  Given this ordinary pleading rule, "it should not prove burdensome" to provide defendants with "some indication" of a plaintiff's claimed loss, and whatever causal connection between that loss and defendants' conduct "that the plaintiff has in mind." *Id*. at 347.  Thus, at the pleading stage, all Plaintiff needs to do is provide a plausible connection between defendants' improper conduct and Plaintiff's loss.  *See Zoran*, 511 F. Supp. 2d at 1015-16 (rejecting defendants' loss causation arguments in a stock option backdating action).

The Amended Complaint alleges such connections between defendants' improper conduct and Quiksilver's loss with clarity and force, clearly satisfying the loss-causation requirement.  For example, the Amended Complaint indicates that by omitting to report the Secret Agreement had potentially invalidated the 2000 Plan, defendants Barnum, Berardino and Mettler were able to maintain their positions on the Board, and continued to grant improper grants and waste Company assets.  By failing to disclose the Secret Amendment, the Defendants caused, and continue to cause, substantial harm to Quiksilver and its shareholders.

**F.     The Amended Complaint Adequately States a Claim For Waste of Corporate Assets**

Contrary to the Individual Defendants' arguments, Plaintiff has sufficiently alleged a claim for corporate waste.   In order to state a claim for corporate waste, a

plaintiff must allege facts showing that a defendant "authorize[d] an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *Glazer v. Zapata Corp.*, 658 A.2d 176, 183 (Del. Ch. 1993).  Because defendants Barnum, Berardino and Mettler, as members of the Compensation Committee, granted defendant McKnight restricted stock units in November 2012 in excess of the Limit and in violation of the 2000 Plan, Plaintiff has pled a valid claim for corporate waste.  *See, e.g.*, *Atmel*, 2008 WL 2561957, at *13 (because the issuance of backdated options benefits the recipient at the expense of the corporation and its shareholders, a fiduciary who knowingly grants backdated options is liable for corporate waste); *Zoran*, 511 F. Supp. 2d at 1019 (directors who violated a shareholder-approved stock option plan by backdating stock options "simply cannot be said to have acted in the company's best interest" and therefore, "plaintiff has pled a claim for corporate waste under Delaware law."); *In re Finisar Corp. Derivative Litig.*, No. C-06-07660, 2012 WL 2873844, at *21 (N.D. Cal. July 12, 2012) (denying defendants' motion to dismiss plaintiff's corporate waste claim where members of the compensation committee granted backdated options to officers).[9]

---

[9]  Individual Defendants argue that since the grant of restricted stock units to McKnight in November 2012 was "made in exchange for valuable consideration," Plaintiff's claim for corporate waste should be dismissed.  Ind. Def. Memo at 20.  It is completely irrelevant whether or not the Company received consideration in exchange for the restricted stock units.  Rather, the express and unambiguous terms of the shareholder-approved 2000 Plan prohibit the Compensation Committee from granting any one person more than 800,000 shares of Quiksilver common stock in any calendar year.  ¶¶3, 37.  By granting McKnight 1,200,000 restricted stock units in November 2012, 400,000 units in excess of the Limit, defendants Barnum, Berardino and Mettler committed corporate waste.  *See In re Brocade Commun's. Sys. Deriv. Litig.*, 615 F. Supp. 2d 1018, 1036 (N.D. Cal. 2009) ("Regardless of the fact that the Company realized some benefit in recruiting and retention of employees from the backdating scheme, Defendants enjoyed ill-gotten gains while injuring the Company's reputation and subjecting it to protracted litigation.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### G.  The Amended Complaint Adequately States a Claim for Unjust Enrichment

"Unjust enrichment is defined as 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'"  *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999) (quoting *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988)); *In re Maxim Integrated Prods.*, 574 F. Supp. 2d 1046, 1069 (N.D. Cal. 2008) (citation omitted).  The elements of a claim for unjust enrichment under Delaware law are: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 585 (Del. Ch. 1998).  Put more concisely, to obtain restitution, Plaintiff is "required to show that the defendants were unjustly enriched, that the defendants secured a benefit, and that it would be unconscionable to allow them to retain that benefit." *Schock*, 732 A.2d at 232 (quoting *Fleer*, 539 A.2d at 1063).

Plaintiff's Amended Complaint plainly alleges that McKnight received restricted stock units that were issued in violation of the 2000 Plan and thus his retention of those restricted stock units is unjust.  ¶¶7-8, 52-53, 101-02.  *See*, *e.g.*, *Ryan*, 918 A.2d at 361 ("I cannot conclude that there is no reasonably conceivable set of circumstances under which Gifford might be unjustly enriched.  Gifford does retain something of value, the alleged backdated options, at the expense of the corporation and shareholders… Thus, I deny the motion to dismiss the unjust enrichment claim."); *Zoran*, 511 F. Supp. 2d at 1018-19 (denying motion to dismiss where defendants benefited from receiving backdated stock options); *Maxim*, 574 F. Supp. 2d at 1069 (same); *Atmel*, 2008 WL 2561957, at *12 (same).

Although Plaintiff does not bring any direct contract claims in this action, Individual Defendants nonetheless argue that because restricted stock units were issued to McKnight under the 2000 Plan and a subsequent agreement in November

2012, these "two agreements control the relationship between McKnight and…Quiksilver" and the equitable remedies associated with a claim for unjust enrichment are unavailable.  Ind. Def. Memo at 20-21.  This argument flies in the face of numerous Delaware cases that have allowed unjust enrichment claims to proceed in the context of the manipulation of stock option grants governed by stock option plans.  *See In re Finisar*, 2012 WL 2873844, at *22 (declining to dismiss claims for unjust enrichment despite the fact that the options at issue were granted pursuant to an express contract); *Ryan*, 918 A.2d at 361 (refusing to dismiss unjust enrichment claims relating to backdating of stock options); *La. Mun. Police Emp. Ret. Sys. v. Crawford*, 918 A.2d 1172, 1180 n.8 (Del. Ch. 2007) ("[I]n most cases the recipient of any ill-gotten gains [from the back-dating of stock options] will also be liable, if not under a theory of breach of fiduciary duty, then for unjust enrichment"); *In re Tyson Foods, Inc.*, 919 A.2d 563, 602-03 (Del. Ch. 2007) (allowing unjust enrichment claims against recipients of spring-loaded options).

Thus, because McKnight was unjustly enriched and the Company was harmed, it would be unjust for him to keep restricted stock units he was granted in excess of the Limit.  Accordingly, Plaintiff has pled a proper claim for unjust enrichment.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order denying Individual Defendants' Motion to Dismiss.

Dated:  February 15, 2013                    Respectfully submitted,

**KESSLER TOPAZ**
 **MELTZER & CHECK, LLP**


/s/ Eric L. Zagar
Eric L. Zagar (250519)
Robin Winchester
Kristen L. Ross
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Fax:  (267) 948-2512

1

2

-and-

Ramzi Abadou (222567)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone:  (415) 400-3000
Fax:  (415) 400-3001

*Counsel for Plaintiff*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28