MICHAEL G. YODER (S.B. #83059)
myoder@omm.com
BRIAN NEACH (S.B. #242801)
bneach@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660-6429
Telephone: (949) 823-6900
Facsimile: (949) 823-6994

Attorneys for Defendants
ROBERT B. MCKNIGHT, JR., WILLIAM M.
BARNUM, JR., JOSEPH BERARDINO,
JAMES G. ELLIS, CHARLES S. EXON, M.
STEVEN LANGMAN, ROBERT L.
METTLER, PAUL C. SPEAKER, ANDREW
W. SWEET

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA STOCKMAN-SANN, Derivatively on Behalf of QUIKSILVER, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROBERT B. MCKNIGHT, JR., WILLIAM M. BARNUM, JR., JOSEPH F. BERARDINO, JAMES G. ELLIS, CHARLES S. EXON, M. STEVEN LANGMAN, ROBERT L. METTLER, PAUL C. SPEAKER, ANDREW W. SWEET, DOUGLAS K. AMMERMAN, <br><br> Defendants, <br><br> and <br><br> QUIKSILVER, INC., a Delaware Corporation, <br><br> Nominal Defendant. | Case No. SACV12-1882 AG (JPRx) <br><br> **DEFENDANTS MCKNIGHT, BARNUM, BERARDINO, ELLIS, EXON, LANGMAN, METTLER, SPEAKER, AND SWEET'S NOTICE OF MOTION AND MOTION TO MOTION TO STAY PROCEEDINGS IN FAVOR OF PARALLEL STATE COURT PROCEEDINGS OR, IN THE ALTERNATIVE, UNTIL AFTER MARCH 19, 2013 QUIKSILVER, INC. SHAREHOLDER MEETING** <br><br> Judge: Hon. Andrew J. Guilford <br> Hearing Date: March 25, 2013 <br> Time: 10:00 a.m. <br> Courtroom: 10D <br><br> [**Declaration Of Brian Neach; Proposed Order Filed Concurrently**] |

INDIVIDUAL DEFENDANTS' NOTICE OF
MOTION AND MOTION TO STAY
PROCEEDINGS
SACV12-1882 AG (JPRx)

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 25, 2013, at 10:00 a.m., or as soon as the matter may be heard, in Courtroom 10D of this Court, located at 411 West Fourth Street, Santa Ana, California 92701, defendants McKnight, Barnum, Berardino, Ellis, Exon, Langman, Mettler, Speaker, and Sweet will and hereby do move the Court for an order staying these proceedings on the following grounds: (1) a stay of proceedings is appropriate because of parallel litigation in the Superior Court of California, Orange County in which the claims are identical to Plaintiff's claims here; or (2) in the alternative, the Court should exercise its discretion to stay proceedings until after completion of the March 19, 2013 meeting of nominal defendant Quiksilver, Inc.'s stockholders at which time all of Plaintiff's claims may be entirely moot.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Brian Neach and the exhibits attached thereto, the argument of counsel, all of the pleadings and other papers on file in this action, and such other matters as may be presented at the hearing on this Motion or prior to the Court's decision. This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place between February 13 and 14, 2013.

- 2 -

INDIVIDUAL DEFENDANTS' NOTICE OF
MOTION AND MOTION TO STAY
PROCEEDINGS
SACV12-1882 AG (JPRx)

Dated: February 19, 2013

MICHAEL G. YODER
BRIAN NEACH
O'MELVENY & MYERS LLP


By: /s/ Brian Neach
    Brian Neach
Attorneys for Defendants
ROBERT B. MCKNIGHT, JR., WILLIAM M. BARNUM, JR., JOSEPH BERARDINO, JAMES G. ELLIS, CHARLES S. EXON, M. STEVEN LANGMAN, ROBERT L. METTLER, PAUL C. SPEAKER, ANDREW W. SWEET

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I. INTRODUCTION ................................................................................... 1

II. BACKGROUND ..................................................................................... 3

    A. The 2000 Plan and June 2011 Grants ........................................... 3

    B. February 2012 Amendment to The 2000 Plan ............................. 4

    C. Filing of Astor Action and Plaintiff's Lawsuit ............................. 4

    D. Surrender of 2011 Grants by McKnight, Stevenson and Agnes ........... 5

    E. Amended Complaints Filed in Astor Action and This Action .............. 5

    F. McKnight's 2013 Surrender of Grants and the 2013 Proxy ................. 6

    G. Procedural Activity in this Action and the Astor Action Following Filing of 2013 Proxy ........................................................... 7

III. ARGUMENT ........................................................................................... 7

    A. The Court has Discretion to Stay These Proceedings .................. 7

    B. A Stay of Proceedings in This Action is Proper Under the Supreme Court's Colorado River Decision ........................................... 8

    C. In the Alternative, a Stay of Proceedings Until After the March 19, 2013 Shareholder Vote is a Proper Exercise of Discretion that Would Conserve Judicial Resources and Spare the Parties Undue Time and Expense ............................................................... 12

IV. CONCLUSION ..................................................................................... 14

INDIVIDUAL DEFENDANTS' POINTS
AND AUTHORITIES; SACV12-1882 AG
(JPRx)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Buckley v. Archer-Daniels-Midland Co.*,
  111 F.3d 524 (7th Cir. 1997) ................................................................................ 13

*Calleros v. FSI Int'l, Inc.*,
  Civ 12-2120, 2012 WL 4097832 (D. Minn. Sept. 18, 2012) ............................. 11

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ....................................................................................passim

*Davis & Cox v. Summa Corp.*,
  751 F.2d 1507 (9th Cir. 1985) ............................................................................ 10

*Giles v. ICG, Inc.*,
  789 F. Supp. 2d 706 (S.D. W. Va. May 27, 2011) ............................................... 9

*Holder v. Holder*,
  305 F.3d 854 (9th Cir. 2002) ............................................................................ 8, 9

*In re Novell, Inc. S'holder Litig.*,
  No. 10-12076-RWZ, 2012 WL 458500 (D. Mass. Feb. 10, 2012) ................ 9, 11

*In re Wal-Mart Stores, Inc. S'holder Derivative Litig.*,
  No. 4:12-cv-4041, 2012 WL 5935340 (W.D. Ark. Nov. 27, 2012) ......... 9, 10, 11

*Int'l Jensen Inc. v. Emerson Radio Corp.*,
  No. 96-C-2816, 1996 U.S. Dist. LEXIS 12481 (N.D. Ill. Aug. 26, 1996) .. 11, 12

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  12 F.3d 908 (9th Cir. 1993) ................................................................................ 10

*Landis v. N. Amer. Co.*,
  299 U.S. 248 (1936) ............................................................................................. 8

*Lee v. Schmidt-Wenzel*,
  766 F.2d 1387 (9th Cir. 1985) ............................................................................ 13

*McCreary v. Celera Corp.*,
  No. 11-1618 SC, 2011 WL 1399263 (N.D. Cal. April 13, 2011) ............ 9, 10, 12

# TABLE OF AUTHORITIES
(continued)

**Page**

*Murphy v. Hunt*,
   455 U.S. 478 (1982) ............................................................................... 13

*Nakash v. Marciano,*
   882 F.2d 1411 (9th Cir. 1989) .................................................................. 8

*Northrop Grumman Corp., v. TRW, Inc.*,
   No. 1:02CV400, 2002 WL 32121845 (N.SD. Ohio Aug. 8, 2002) .................. 14

*Rivers v. Walt Disney Co.*,
   980 F. Supp. 1358 (C.D. Cal. 1997) ...................................................... 7, 8

*S.E.C. v. Dresser Indus., Inc.*,
   628 F.2d 1368 (D.C. Cir. 1980) ................................................................ 8

*The Vladimir Gusinsky Living Trust v. McKnight, et al.*,
   Case No. 8190 ............................................................................................. 1

*Travelers Indem. Co. v. Madonna*,
   914 F.2d 1364 (9th Cir. 1990) ............................................................ 9, 12

*U.S. Parole Comm'n v. Geraghty*,
   445 U.S. 388 (1980) ............................................................................... 13

*Volmar Dist., Inc. v. New York Post, Inc.*,
   152 F.R.D. 36 (S.D.N.Y. 1993) ................................................................ 8

*Wahyou v. Cent. Valley Nat'l Bank*,
   361 F.2d 755 (9th Cir. 1966) .................................................................. 13

**STATUTES**

Internal Revenue Code, Section 162(m) ............................................................ 4, 5

Securities & Exchange Act, Section 14(a) .................................................. 1, 4, 10

**RULES**

Fed. R. Civ. P. 1 ...................................................................................................... 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Patricia Stockman-Sann's ("Plaintiff's") Corrected Verified Amended Shareholder Derivative Complaint (the "CAC") is not the only purportedly derivative complaint that has been filed to seek remedies in connection with certain grants of Restricted Stock Units ("RSUs") to certain officers of nominal defendant Quiksilver, Inc. ("Quiksilver").[1] Nor was it the first. The first complaint alleging wrongdoing in connection with the RSU grants was filed in the Superior Court of the State of California, Orange County (the "Superior Court"), and is entitled *Astor BK Realty Trust v. McKnight*, Case No. 30-2012-00603315-CU-MC-CJC ("Astor Action"). In the Astor Action, which is currently before the Honorable Craig Griffin, the amended complaint contains allegations nearly identical to those alleged in the CAC and seeks identical relief. To preserve judicial resources and to avoid the undue effort and expense of litigating identical issues in two different courts, the Individual Defendants seek an order from this Court staying these proceedings in favor of the Astor Action.[2]

There is no question that it is within this Court's discretion to stay these proceedings in favor of the Astor Action. Both the Federal Rules of Civil Procedure and the United States Supreme Court's decision in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), allow for such a stay. Although Plaintiff's CAC does have a claim under Section 14(a) of the Securities & Exchange Act ("Exchange Act") based on certain disclosure

---

[1] A second federal action was filed after Plaintiff's and is currently before this Court. *See Alaska Electrical Pension Fund v. McKnight, et al.*, Case No. 8:12-cv-02071-AG-JPR. The Individual Defendants are also moving to stay that action on the same grounds as this one. Another plaintiff filed an action in the Delaware Chancery Court, but no defendant has yet been served in that action. *See The Vladimir Gusinsky Living Trust v. McKnight, et al.*, Case No. 8190.

[2] "Individual Defendants" refers to defendants Robert B. McKnight, Jr., William M. Barnum, Jr., Joseph Berardino, James G. Ellis, Charles S. Exon, M. Steven Langman, Robert L. Mettler, Paul C. Speaker, and Andrew W. Sweet.

INDIVIDUAL DEFENDANTS' POINTS
AND AUTHORITIES; SACV12-1882 AG
(JPRx)

violations, the amended complaint in the Astor Action contains a count for violation of the duty of candor based on the same disclosure violations that Plaintiff alleges here. As other federal courts have recognized, it is appropriate to stay a case with an Exchange Act-based cause of action when a state court proceeding is addressing substantially similar disclosure violations.

Even if there were no parallel proceeding, a stay of proceedings would still be appropriate and warranted. At this time, there are no longer any existing RSU grants that are in excess of the 800,000 annual limitation upon which Plaintiff bases Counts I, III, V and VII in the CAC. Those Counts are therefore moot. In addition, on February 11, 2013, Quiksilver filed with the Securities & Exchange Commission ("SEC") a definitive Schedule 14A ("2013 Proxy") that sets an annual shareholder meeting for March 19, 2013. At that meeting, Quiksilver's shareholders will vote on three proposals, two of which directly impact Plaintiff's remaining Counts. First, the shareholders will vote on whether to approve a 2013 Stock Incentive Plan ("2013 Plan") that will replace and supersede the current 2000 Stock Incentive Plan ("2000 Plan"). Plaintiff's Count II is based upon allegations that the Individual Defendants improperly approved an amendment to the 2000 Plan in February 2012 (the "February 2012 Amendment"). If the shareholders approve the 2013 Plan, there will be no reason to litigate any issues related to the February 2012 Amendment because it will be superseded and of no effect. Plaintiff's Count II would therefore be moot.

In addition, Quiksilver's shareholders will vote on whether the Individual Defendants (except Exon and Speaker) should be elected to Quiksilver's Board of Directors (the "Board"). Plaintiff's Counts IV and VI are based on alleged misstatements in Quiksilver's 2012 Proxy Statement ("2012 Proxy") and the relief that Plaintiff seeks for those alleged misstatements is a new 2012 director election. Once the shareholders have voted on March 19, 2013, there will be no reason to

litigate issues regarding the 2012 Board election. Counts IV and VI of Plaintiff's CAC will therefore also be moot.

The facts and circumstances here weigh heavily on the side of staying these proceedings in favor of the Astor Action. Alternatively, a stay of proceedings until after the March 19, 2013 Quiksilver shareholder vote would be an appropriate and sensible exercise of this Court's discretion.

## II. BACKGROUND

### A. The 2000 Plan and June 2011 Grants

As alleged in the CAC, on March 22, 2011, Quiksilver's shareholders voted to reapprove the company's 2000 Plan.[3] (*Id.* ¶ 39.) The 2000 Plan provides for the granting of equity awards including stock options, stock appreciation rights, restricted stock, and RSUs to Quiksilver's executive officers, employees and non-employee Board members. (*Id.* ¶ 35.)

On June 13, 2011, the Committee granted RSUs to certain Quiksilver employees. (*Id.* ¶ 40.) Among them were defendant McKnight, and executives Craig Stevenson and Pierre Agnes, who received 2,000,000, 1,000,000 and 1,000,000 RSUs, respectively (the "June 2011 Grants"). (*Id.*) The June 2011 Grants were structured such that, absent a company change of control, they would only vest upon a substantial increase in Quiksilver's stock price: namely, an increase from the then-trading price of $4.65 per share to $12.50 per share—or roughly 270%.[4] (Neach Decl. Ex. 2 (Quiksilver 8-K).) If the RSUs did not vest

---

[3] Defendants assume the truth of Plaintiff's allegations only for purposes of this motion.

[4] Plaintiff claims that McKnight received $10,203,200 in compensation in 2011 to give a false impression that he actually received a monetary benefit from the June 2011 Grant. (CAC ¶ 71.b (citing 2012 Proxy).) That figure, however, is required under the Securities and Exchange Commission's ("SEC's") reporting rules to show the fair value of vested and unvested equity compensation. *See* SEC Regulation S-K Item 402(c). As the 2012 Proxy explains, the "amounts listed do not necessarily reflect the dollar amounts of compensation actually realized or that may be realized . . .. In accordance with SEC requirements, these amounts reflect the aggregate grant date fair value . . .." (Neach Decl. Ex. 1 (2012 Proxy), at 24.)

within a period of just over five years, they would terminate automatically. (*Id.*) Nonetheless, the CAC contains no allegation that the RSUs did in fact vest; nor could it because Quiksilver's stock price has yet to increase to $12.50 per share.[5]

### B. February 2012 Amendment to The 2000 Plan

The Board amended the 2000 Plan in February 2012, effective as of June 13, 2011, to clarify that the 800,000 share annual limit on equity awards in the 2000 Plan does not apply to those awards which are not intended to be exempt from Section 162(m) of the Internal Revenue Code and thus not meant to be deductible by the company for tax purposes (the "February 2012 Amendment"). (*Id.* ¶ 48.) In March 2012, Quiksilver held its Annual Meeting, at which its directors were up for election. (*Id.* ¶ 59.) Each of the nine directors standing for reelection was reelected. (CAC at ¶ 59.)

### C. Filing of Astor Action and Plaintiff's Lawsuit

On October 4, 2012, the initial purported derivative complaint in the Astor Action was filed by Astor BK Realty Trust (the "Astor Plaintiff"), alleging that the RSU grants constituted a breach of the Board's fiduciary duties, unjust enrichment to McKnight, Agnes and Stevenson, and also constituted corporate waste. Nearly one month later, on October 29, 2012, Plaintiff commenced this action alleging that the June 2011 Grants were in violation of the 2000 Plan because the grants exceeded 800,000 shares per recipient. Plaintiff's initial complaint purported to be a derivative suit brought on behalf of Quiksilver, and contained five counts: Count I for Breach of Fiduciary Duty against the Committee; Count II for Breach of Fiduciary Duty against the Board; Count III for Waste of Corporate Assets against the Committee; Count IV for Violation of Section 14(a) of the Securities and Exchange Act against the Board; and Count V for Unjust Enrichment against McKnight and former defendants Pierre Agnes and Craig Stevenson.

---

[5] In fact, Quiksilver's stock price closed at $6.37 on February 15, 2013, and has never closed at a price higher than $6.76 since the date of the June 2011 grants.

- 4 -  INDIVIDUAL DEFENDANTS' POINTS AND AUTHORITIES; SACV12-1882 AG (JPRx)

### D. Surrender of 2011 Grants by McKnight, Stevenson and Agnes

For avoidance of doubt as to the propriety of the June 2011 Grants, Quiksilver's executives, including McKnight, Stevenson and Agnes, surrendered their June 2011 Grants to the extent they exceeded 800,000 shares (*i.e.*, McKnight, Stevenson and Agnes surrendered 1,200,000, 200,000 and 200,000 shares respectively). (*Id.* ¶ 51.) The Committee then made grants to McKnight, Stevenson and Agnes in the amounts of 1,200,000, 200,000 and 200,000 shares respectively (the "November 2012 Grants"), putting in place largely the same vesting requirements as the June 2011 Grants—including the $12.50 per share price—and specifying that the November 2012 Grants were "not intended to be exempt from Section 162(m) of the Code and are not designed to be deductible by the Company for tax purposes" so as not to implicate the 2000 Plan's 800,000 share annual limit. (*Id.* ¶ 52; Neach Decl. Ex. 2 (Quiksilver 8-K).) On November 13, 2012, Quiksilver reported the surrender of the June 2011 Grants, the November 2012 Grants, and the February 2012 Amendment in a Form 8-K filed with the SEC. (CAC at ¶¶ 51–52).)

### E. Amended Complaints Filed in Astor Action and This Action

Plaintiff and the Astor Plaintiff reacted to the Form 8-K by filing amended complaints. The Astor Plaintiff filed its amended complaint on November 21, 2012, adding a count related to the February 2012 Amendment and a purported class action count for alleged misleading disclosures in the 2012 Proxy. Over one month later, on December 26, 2012, Plaintiff filed her CAC that added a count for breach of fiduciary duty against the Board for allegedly wrongful approval of the February 2012 Amendment, another count for breach of fiduciary duty based on the November 2012 grants, and also removed Agnes and Stevenson as defendants. (*Id.* ¶¶ 77–86.) The following chart displays the Counts in the amended complaint filed in the Astor Action and those in Plaintiff's CAC:

| Allegations Against Individual Defendants | Applicable Count in Plaintiff's CAC | Applicable Count in Astor Action |
|---|---|---|
| Breach of Fiduciary Duty for June 2011 Grants | I | I |
| Breach of Fiduciary Duty for Wrongful Approval of February 2012 Amendment | II | I |
| Breach of Fiduciary Duty for November 2012 Grant | III | I |
| Breach of Fiduciary Duty for Alleged Misleading Statements in 2012 Proxy | IV | IV |
| Corporate Waste | V | III |
| Violation of Section 14(a) of the Exchange Act | VI | N/A |
| Unjust Enrichment Against McKnight | VII | II |

(*See* CAC at ¶¶ 73-103; Neach Decl. Ex. 3 at ¶¶ 75-100 (Astor Action Am. Compl).)

### F.   McKnight's 2013 Surrender of Grants and the 2013 Proxy

On January 22, 2013 Quiksilver filed a Form 4—a Statement of Changes in Beneficial Ownership—with the SEC. (Neach Decl. Ex. 4)  The Form 4 disclosed that on January 22, 2013, McKnight surrendered 400,000 RSUs awarded to him in the November 2012 Grant.  (*Id.*)  That same day, McKnight was awarded 400,000 RSUs with largely the same vesting requirements as the November 2012 Grant (the "January 2013 Grant"), including the $12.50 vesting share price.  (*Id.*)

On February 11, 2013, Quiksilver issued its 2013 Proxy Statement.  (*Id.* Ex. 5.)  The statement lists among the items up for shareholder vote:  (1) the election of the Quiksilver board; and (2) the approval of the 2013 Incentive Plan.  (*Id.*)  The annual shareholder meeting, at which the vote will occur, is scheduled for March 19, 2013.  (*Id.*)

### G. Procedural Activity in this Action and the Astor Action Following Filing of 2013 Proxy

On February 13, 2013, counsel for the Individual Defendants sent emails to counsel for Plaintiff, counsel for plaintiff in the related *Alaska Electrical* action, and counsel for the Astor Plaintiff. (Neach Decl. ¶¶ 6-8, Exs. 6, 7, 8.) In the emails, counsel for the Individual Defendants explained that the surrender of the RSU grants and the filing of the 2013 Proxy had effectively mooted all three plaintiffs' claims and that the results of March 19, 2013 shareholder vote would make clear what remained, if anything, of the plaintiffs' claims. (*Id.*) Counsel for the Individual Defendants requested that the plaintiffs agree to a stay of all proceedings until after the March 19, 2013 vote. (*Id.*) Counsel for Plaintiff and counsel for the Astor Plaintiff would not agree to a stay and no response was received from counsel for plaintiff in the related *Alaska Electrical* action. (*Id.*).

In fact, instead of agreeing to a stay, counsel for Plaintiff and counsel for the Astor Plaintiff indicated that they would each seek injunctive relief based on alleged misleading disclosures in the 2013 Proxy. On February 15, 2013, Plaintiff filed a motion for expedited discovery and related *ex parte* application in connection with a contemplated motion for preliminary injunction. (Doc. Nos. 30, 31.) In the Astor Action, the plaintiff stated that it would seek *ex parte* relief to pursue a preliminary injunction hearing. (Neach Decl. Ex. 7.) Ultimately, the Individual Defendants and the Astor Plaintiff agreed on a briefing schedule for the Astor Plaintiff's contemplated motion for preliminary injunction and for the Individual Defendant's contemplated motion to stay proceedings pending the March 19, 2013 shareholder vote. (*Id.*)

## III. ARGUMENT

### A. The Court has Discretion to Stay These Proceedings

"A district court has the inherent power to stay its proceedings." *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997). The power to do so is

"'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Id.* (quoting *Landis v. N. Amer. Co.*, 299 U.S. 248, 254 (1936)); *see also Volmar Dist., Inc. v. New York Post, Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) ("Depending on the particular facts of the case, the court may decide to stay civil proceedings, postpone civil discovery, or impose protective orders.") (citing *S.E.C. v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980)). In exercising this discretionary power, courts should give due consideration to Federal Rule of Civil Procedure 1, which states that the Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."

**B. A Stay of Proceedings in This Action is Proper Under the Supreme Court's *Colorado River* Decision**

Under the doctrine announced by the United States Supreme Court in *Colorado River*, a federal court can abstain from exercising its jurisdiction in favor of parallel state proceedings where doing so would serve the interest of "[w]ise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817. "Exact parallelism" between the state and federal actions is not required; it is enough if the two actions are "substantially similar." *Nakash v. Marciano,*, 882 F.2d 1411, 1416 (9th Cir. 1989). The Ninth Circuit, however, does emphasize that the *Colorado River* doctrine is a "narrow exception" and that a stay of proceedings pursuant to the doctrine is appropriate only where "exceptional circumstances" are present. *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002).

There is no question that this action and the Astor Action are parallel actions. As the chart in Part II.F shows, the Counts that are in Plaintiff's CAC are nearly identical to those in the Astor Action amended complaint. Moreover, a review of the allegations in both operative complaints makes clear that the two plaintiffs'

pleadings are based on the same allegations of wrongdoing.

To determine whether a stay under *Colorado River* is appropriate when parallel actions are present, courts consider seven factors, two of which—the time when the state court assumed jurisdiction over property and the inconvenience of the federal forum—have no bearing on the issues here. *See McCreary v. Celera Corp.*, No. 11-1618 SC, 2011 WL 1399263 at *3 (N.D. Cal. April 13, 2011) (citing *Holder*, 305 F.3d at 870). That leaves the following five factors: (1) the desirability of avoiding piecemeal litigation; (2) the order in which jurisdiction was obtained by the concurrent forums; (3) whether federal law or state law provides the rule of decision on the merits; (4) whether the state court proceedings are inadequate to protect the federal litigant's rights; and (5) whether exercising jurisdiction would promote forum shopping. *McCreary*, 2011 WL 1399263 at *3 (citing *Holder*, 305 F.3d at 870).

As other courts have concluded in cases involving parallel proceedings with allegations very similar to those in this action and the Astor Action, the *Colorado River* factors weigh in favor of staying proceedings. *See McCreary*, 2011 WL 1399263 at *5 (staying proceedings); *see also In re Wal-Mart Stores, Inc. S'holder Derivative Litig.*, No. 4:12-cv-4041, 2012 WL 5935340 (W.D. Ark. Nov. 27, 2012) (same); *In re Novell, Inc. S'holder Litig.*, No. 10-12076-RWZ, 2012 WL 458500 (D. Mass. Feb. 10, 2012) (same); *Giles v. ICG, Inc.*, 789 F. Supp. 2d 706 (S.D. W. Va. May 27, 2011) (holding preliminary injunction motion based on violations of federal law in abeyance until further development in parallel state court proceedings). For the same reasons discussed in these cases and as discussed further below, a stay under *Colorado River* is proper here.

First, avoiding piecemeal litigation favors a stay when "different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990). Here, allowing Plaintiff's claims to proceed in parallel with the Astor Action would

1  waste judicial resources and run the risk of inconsistent or conflicting results. This
2  factor weighs in favor of staying these proceedings. *See McCreary*, 2011 WL
3  1399263 at *4; *Wal-Mart*, 2012 WL 5935340 at *5-6.
4      Second, plaintiff in the Astor Action filed its initial complaint nearly one
5  month before Plaintiff filed hers. Likewise, Plaintiff did not file her CAC until over
6  one month after the amended complaint in the Astor Action was filed. In addition,
7  counsel for plaintiff in the Astor Action and counsel for the Individual Defendants
8  have already agreed on a briefing schedule for the plaintiff's motion for preliminary
9  injunction. This factor weighs heavily in favor of staying these proceedings.
10 *McCreary*, 2011 WL 1399263 at *4 (stating that factor weighed in favor of state
11 court action where state action was filed two weeks before the federal action and a
12 hearing date was set for a motion for preliminary injunction).
13     Third, with respect to the state-law based derivative claims (and the Astor
14 Plaintiff's class action disclosure claim), Delaware law will control in these
15 proceedings and in the Astor Action because Quiksilver is a Delaware corporation.
16 *See Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1527 (9th Cir. 1985) (discussing
17 internal affairs doctrine). So this factor is largely neutral.
18     Although Plaintiff's Count VI is a disclosure claim under Section 14(a) of the
19 Exchange Act—over which this Court has exclusive jurisdiction—that does not
20 prevent this Court from staying these proceedings in favor of the Astor Action. The
21 *McCreary* court addressed this very issue in light of Ninth Circuit decisions that
22 suggest that district courts cannot stay proceedings in favor of a parallel action
23 when there are exclusive federal jurisdiction claims present. *See McCreary*, 2011
24 WL 1399263 at *4 (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d
25 908, 913 n.7 (9th Cir. 1993)). The *McCreary* court noted that because the
26 plaintiff's Exchange Act claim was "duplicative" of the state law claims, the fact
27 that it had exclusive jurisdiction over the Exchange Act claim did not prevent
28 ordering a stay under *Colorado River*. *See McCreary*, 2011 WL 1399263 at *4; *see*

*also Novell*, 2012 WL 458500 at *8 (discussing similarity in materiality standards under federal law to those under Delaware law and noting that "a decision by the Delaware court could provide a predicate for collateral estoppel of plaintiffs' 1934 Act claims"); *Wal-Mart*, 2012 WL 5935340 at *4 ("Because both this Court and the Delaware Chancery Court would be required to determine whether Wal-Mart officers made material misrepresentations and/or omissions, the 'disposition of the state claims is substantially likely' to dispose of the Exchange Act claims in this Court." (quoting *Calleros v. FSI Int'l, Inc.*, Civ 12-2120, 2012 WL 4097832 at *3 (D. Minn. Sept. 18, 2012).

A review of the two operative pleadings makes clear that the same duplication that convinced other courts that Exchange Act claims could by stayed in favor of parallel state proceedings exists here. Both amended complaints claim that there are misleading disclosures in the 2012 Proxy. Both amended complaints state that the 2012 Proxy was misleading because it allegedly misstated the Committee's discretion under the 2000 Plan, (*see* CAC at ¶ 56; Astor Am. Compl. at ¶ 59), allegedly improperly omitted reference to the February 2012 Amendment (*see* CAC at ¶ 58; Astor Am. Compl. at ¶ 58), and allegedly improperly omitted statements that the Committee granted RSUs in excess of the 2000 Plan's limits. (*See* CAC at ¶ 57; Astor Am. Compl at ¶ 58.)

Plaintiff's disclosure claims are duplicative of those in the amended complaint in the Astor Action and wrapping them in an Exchange Act cause of action should not prevent a stay. In *Int'l Jensen Inc. v. Emerson Radio Corp.*, No. 96-C-2816, 1996 U.S. Dist. LEXIS 12481 (N.D. Ill. Aug. 26, 1996), the court stayed a federal action in which the plaintiff asserted Exchange Act claims that were duplicative of state law fiduciary duty claims in a parallel Delaware proceeding. *Id.* 1996 U.S. Dist. LEXIS at *18. The *Jensen* court stated that a stay was warranted because, like Plaintiff's federal claim here, the "relationship and nature of the exclusively federal claim and the state law claims are so decisively

similar." *Id.* at 11.

As to the fourth *Colorado River* factor, whether the state court proceedings are inadequate to protect the federal litigant's rights, this factor is neutral. The relief that Plaintiff seeks under its Exchange Act claim is a new director election. In the Astor Action, the plaintiff also seeks a new director election based on its disclosure claims. *See McCreary*, 2011 WL 1399263 at *5 ("Whether an injunction is granted or denied by this Court or by the Delaware Court is unimportant . . . .").

As for the fifth and final factor—whether exercising jurisdiction would promote forum shopping—this factor weighs in favor of a stay. Plaintiff filed a duplicative federal complaint nearly one month after Astor Plaintiff filed its complaint, with the only meaningful difference being the inclusion of the Exchange Act claim. In these circumstances, the Court should be "wary of the likelihood that Plaintiff filed this action to 'gain a tactical advantage from the application of federal court rules.'" *McCreary*, 2011 WL 1399263 at *5 (quoting *Travelers*, 914 F.2d at 1369.

Based on these factors, it is entirely appropriate and warranted for this Court to stay these proceedings in favor of the Astor Action under the *Colorado River* doctrine.

**C.  In the Alternative, a Stay of Proceedings Until After the March 19, 2013 Shareholder Vote is a Proper Exercise of Discretion that Would Conserve Judicial Resources and Spare the Parties Undue Time and Expense**

Even if this Court decides not to stay these proceedings under *Colorado River*, the pending March 19, 2013 shareholder meeting justifies a stay of proceedings until after the vote to take place at the meeting is complete. While a number of Plaintiff's claims are already moot, the shareholder vote on the proposals in the 2013 Proxy, especially if they are approved, will moot the remainder of Plaintiff's CAC.

An action is mooted "'when the issues presented are no longer 'live' or the

parties lack a legally cognizable interest in the outcome.'" *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)). Intervening board action during the pendency of a lawsuit, as occurred here, can moot claims if no live controversy remains. For instance, in *Lee v. Schmidt-Wenzel*, 766 F.2d 1387 (9th Cir. 1985), plaintiffs challenged the manner in which the defendant directors had filled board vacancies. *Id.* at 1388. While the suit was pending, however, a special meeting of the bank's shareholders was held, and a new board was elected. *Id.* at 1389. The Ninth Circuit held the case to be moot since "[w]ith that vote, a live question was no longer present because even a favorable decision by the district court would not have entitled the appellees to relief." *Id.* at 1390; *see also Wahyou v. Cent. Valley Nat'l Bank*, 361 F.2d 755, 757 (9th Cir. 1966) (challenge to special election of board of directors mooted by expiration of term of office).

In this case, the RSU grants that supplied the basis for Plaintiff's Counts I, III, V and VII have been surrendered. Accordingly, there are no longer any allegedly wrongful grants, nor is there any relief to be had in pursuing any claims regarding them. If the shareholders approve the 2013 Plan, the 2000 Plan will be superseded and the February 2012 Amendment will no longer have any effect. There would be no reason to pursue any claims based on that amendment and Plaintiff's Count II would be moot. Finally, election of the directors at the March 19, 2013 shareholder meeting will moot Plaintiff's Counts IV and VI, because any issues with the 2012 Proxy would not have any impact on the current year's vote. Moreover, the Court would not have any ability to provide the relief that Plaintiff seeks for the allegedly misleading disclosures because the newly-elected board members will be in place. *See Buckley v. Archer-Daniels-Midland Co.*, 111 F.3d 524 (7th Cir. 1997) (action challenging misrepresentations in proxy materials which resulted in director reelections rendered moot by intervening director elections).

The March 19, 2013 shareholder meeting will have a significant impact on

1  Plaintiff's claims, potentially mooting what remains of Plaintiff's CAC.  It is
2  appropriate for this Court to stay proceedings until after the March 19, 2013
3  shareholder meeting because it will avoid costly litigation and waste of judicial
4  resources.  *See Northrop Grumman Corp., v. TRW, Inc.*, No. 1:02CV400, 2002 WL
5  32121845 at *34 (N.SD. Ohio Aug. 8, 2002) (refusing to decide constitutional issue
6  where shareholder vote would potentially moot it).

## IV. CONCLUSION

Based on the foregoing, the Individual Defendants respectfully request that the Court stay the proceedings in this action in favor of the Astor Action or, in the alternative, that the Court stay proceedings until after the March 19, 2013 meeting of Quiksilver's shareholders.

Dated:  February 19, 2013

> MICHAEL G. YODER
> BRIAN NEACH
> O'MELVENY & MYERS LLP
>
> By:   /s/ Brian Neach
>           Brian Neach
> Attorneys for Defendants
> ROBERT B. MCKNIGHT, JR.,
> WILLIAM M. BARNUM, JR., JOSEPH
> BERARDINO, JAMES G. ELLIS,
> CHARLES S. EXON, M. STEVEN
> LANGMAN, ROBERT L. METTLER,
> PAUL C. SPEAKER, and ANDREW
> W. SWEET.

- 14 -

INDIVIDUAL DEFENDANTS' POINTS
AND AUTHORITIES; SACV12-1882 AG
(JPRx)